UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Deborah Shiemke,

    Plaintiff,

v.                                                                              Case No. 13-14738

Target Corporation,                                                 Honorable Sean F. Cox

    Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. #16)**

This is a slip-and-fall case. Plaintiff Deborah Shiemke ("Plaintiff") alleges that she sustained injuries when she slipped and fell on a puddle of water at Defendant Target Corporation's ("Defendant" or "Target") store located in Macomb, Michigan. Defendant maintains that it had no notice of the dangerous condition and that the condition was open and obvious.

This matter is before the Court on Defendant's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56. (Doc. #16). The motion has been fully briefed by the parties and the Court heard oral argument on the motion on December 11, 2014. For the reasons set forth below, the Court shall DENY Defendant's motion.

**BACKGROUND**

The background facts are largely undisputed. On July 2, 2012 at about 1:00 p.m., Plaintiff was shopping in the curtain aisle of the Macomb, Michigan Target store. (Pl. Stmt. at ¶ 1; Def. Stmt. at ¶ 1). Plaintiff alleges that she fell on water that was present on the floor in the curtain aisle. (Pl. Stmt. at ¶ 2; Def. Stmt. at ¶ 2).

1

Plaintiff claims she did not see the water before she fell, although it is undisputed that Plaintiff saw the water on the floor after she had fallen. (Pl. Stmt. at ¶ 3; Def. Stmt. at ¶ 3). Plaintiff did not know where the water had come from, and had not seen anyone spill anything on the floor in that area. (Pl. Stmt. at ¶ 4; Def. Stmt. at ¶ 4). At her deposition, Plaintiff was asked if she had "any idea from [her] own personal knowledge how long that water might have been there," to which Plaintiff responded "No." (Pl. Dep. Attached to Pl. Resp. as Ex. 7 at p. 50). However, Plaintiff testified that the puddle of water appeared to have somewhat dried up, (Pl. Dep. at 39), and that "it looked like it had been walked through . . . ." (Pl. Dep. at 72; *see also* Photos of Target Floor, attached to Pl. Resp. at Ex. 2).

Plaintiff testified that the store floor was generally very shiny. (Pl. Dep. at 37). Target manager Kali Bender ("Bender") confirmed that the store floor is shiny, and that the floor reflects the overhead fluorescent lighting. (Bender Dep. at 60-61).

Julie Oliver ("Oliver"), a Team Member at Target, completed a Team Member Witness Statement after Plaintiff's fall. Oliver described the area of the fall as having a "large puddle of clear liquid (water) and dirty shoe/sandal print." (Stmt. of Julie Oliver, attached to Pl. Resp. at Ex. 1). Oliver testified at her deposition that "there was just some kind of marking in the water, you know, like a shoe print or like a smear of one . . . ." (Dep. of Julie Oliver, attached to Pl. Resp. at Ex. 9, p. 27).

Nicole Colasanti ("Colasanti"), another Target Team Member, was with Oliver when Plaintiff approached them after she had fallen. (Dep. Of Nicole Colasanti, attached to Pl. Resp. at Ex. 10, p. 10-11). Colasanti inspected the area where Plaintiff fell:

Q:      What did you observe when you got to the curtain aisle?

> A: . . . I just remember seeing the spill and seeing it appeared to be water . . .
>
> And it looked, my opinion, medium size, looked like a footprint-ish swoosh
>
> . . .
>
> Q: It looked like it had been tracked in?
>
> A: One track.

(Dep. Of Nicole Colasanti, Pl. Respl. at Ex. 10 p. 15).

The parties agree that no evidence indicates that a Target employee created the water spill. (Pl. Stmt. at ¶ 5; Def. Stmt. at ¶ 5). The parties dispute whether Target had actual or constructive notice of the water spill. (Pl. Stmt. at ¶ 5; Def. Stmt. at ¶ 5).

Bender testified that the water causing plaintiff's fall could have been in existence for at least thirty (30) minutes to an hour prior to the incident. (Dep. Of Kali Bender, attached to Pl. Resp. at Ex. 8, p. 68). Oliver testified that the water could have been on the floor as long as two (2) hours before Plaintiff fell. (Oliver Dep at 33). Target Team Leader David Gedert ("Gedert") testified that he last inspected the curtain aisle between 9:00 a.m. and 9:30 a.m. on the morning of July 2, 2012—a full three and a half hours before Plaintiff fell. (Dep. of David Gedert, attached to Pl. Resp. at Ex. 12 p. 29-30).

On November 15, 2013, Plaintiff filed her Complaint against Defendant in this Court based on the diversity of citizenship of the parties. (Compl., Doc. #1). In her Complaint, Plaintiff alleges that Defendant breached its duty to maintain its business premises in a reasonably safe manner by allowing dangerous floor conditions to exist on the floor, and by failing to warn Plaintiff of same. (Doc. #1 at 2-3). Plaintiff alleges that, based on this slip-and-fall accident, she had to undergo surgery for "recurrent disc herniation" and has experienced "pain and suffering, humiliation,

3

disability, mental anguish, embarrassment, wage loss and has incurred medical and hospital bills for her care and treatment." (Doc. #1 at 3-4).

Defendant filed its Motion for Summary Judgment on September 22, 2014. (Doc. #16). In its motion, Defendant argues that it is entitled to judgment in its favor because Plaintiff has come forth with no evidence showing that Target knew about or created the dangerous condition. Defendant further argues that the condition was open and obvious, and that no exception to the open and obvious doctrine applies. Plaintiff responds (Doc. #18) that the condition of the water spill is such that Defendant was on constructive notice of its existence, and that the water on the tile was not open and obvious. Defendant has filed a reply in support of its motion. (Doc. #22).

## STANDARD OF DECISION

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1984), *quoting* FED. R. CIV. P. 56(c).

"The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case." *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir.1993). "The moving party may meet its burden by showing that the nonmoving party lacks evidence to support an essential element of its case." *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993). The plaintiff must come forth with more than a "mere scintilla of evidence" in support of his or her position in order to survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "The court must view the evidence, all

facts, and any inferences that may permissibly be drawn from the facts in the light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

Because this Court sits in diversity, the substantive law of Michigan governs the claims in this case. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012); *Schare v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 2031958 at *2 (E.D. Mich. 2012).

In Michigan, premises liability flows from the ownership, possession, or control of the land at issue. *Laier v. Kitchen*, 266 Mich. App. 482, 493 (2005). To succeed in a premises liability action, a plaintiff must prove: 1) that the defendant owed the plaintiff a duty; 2) that the defendant breached that duty; 3) that the defendant's breach caused the plaintiff's harm, and 4) that the plaintiff suffered damages. *Hunley v. DuPont Automotive*, 341 F.3d 491, 496 (6th Cir. 2003).

For the purposes of premises liability, the landowner's duty depends on the status of the injured party. *Taylor v. Laban*, 241 Mich.App. 449, 425, 616 N.W.2d 229 (2000), citing *Doran v. Combs*, 135 Mich.App. 492, 495, 354 N.W.2d 804 (1984). Michigan utilizes three categories: invitees, licensees, and trespassers. *Kessler*, 448 F.3d at 336-37. An invitee is an individual who enters the land of another for a commercial purpose. *Cote v. Lowe's Home Ctr., Inc.*, 896 F. Supp. 2d 637, 644 (E.D. Mich. 2012).

The parties agree that Plaintiff was an invitee on Target's premises on the day she fell. A storekeeper, like Target, has a duty to keep its premises reasonably safe for customers' use. *Serinto v. Borman Food Stores*, 380 Mich. 637, 640-41 (1968). The storekeeper-landowner must also warn the invitee of any known dangers existing on the premises. *James*, 626 N.W.2d at 162-63, citing *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596-597 (2000).

5

To prevail against a storekeeper for negligent premises maintenance or failure to warn, a plaintiff must show that the storekeeper either caused the dangerous condition or had actual or constructive knowledge of its existence. *Serinto*, 380 Mich. at 640-41. Absent concrete proof, knowledge can be inferred if the condition was of such a character, or existed for a period of time, such that the storekeeper should have discovered it in the exercise of reasonable care. *Id*; see also *Kroll v. Katz,* 374 Mich. 364, 372 (1965).

## A.    Is There A Genuine Issue Of Material Fact As To Whether The Water Spill Was Open And Obvious?

Defendant argues that the water spill on the floor of the curtain aisle was open and obvious, and therefore Defendant owed Plaintiff no duty to protect her from, or warn her of, the hazard.

The open and obvious doctrine is "an integral part of the definition of [the] duty that an invitor owes to its invitee." *Matteson v. Northwest Airlines, Inc.*, 495 Fed. App'x 689, 691 (6th Cir. 2012) (internal quotations and citation omitted). "In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516 (2001). A premises owner, however, owes no duty to protect a business invitee from or to warn of "open and obvious" dangers. *Matteson*, 495 Fed. App'x at 691 (quoting *Lugo*, 464 Mich. at 516). "Put simply, [the open and obvious doctrine] means that an invitor has no duty to protect its invitee from an open and obvious danger, unless that danger has special aspects that make it particularly likely to cause harm." *Id.*

A hazard is open and obvious if "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." *Id.* The Court should consider whether "it is reasonable to expect that the invitee would discover the danger[.]"

6

*Novotney v. Burger King Corp.*, 198 Mich. App. 470, 475 (1993). "If reasonable minds could differ on the question of whether a condition is open and obvious, the decision must be left to the jury." *Mousa v. WalMart Stores E., L.P.*, 2013 WL 5352949, at *5 (E.D. Mich. 2013), citing *Vella v. Hyatt Corp.*, 166 F. Supp. 2d 1193, 1198 (E.D. Mich. 2001).

The Michigan Court of Appeals has previously considered whether water on the floor of a retail store could be considered an open and obvious hazard. *See Snyder v. Jack's Fruit Market*, 1997 WL 33354547 (Mich. App. 1997). In *Snyder*, the plaintiff was shopping in defendant's grocery store when she slipped and fell in a puddle of water on the floor near a meat cooler. *Id.* at *1. The Michigan Court of Appeals found that the issue of whether the water was an open and obvious condition was a question of fact. *Id.* at *2. The court explained that

> one can reasonably argue that because a shopper may be distracted by product displays and promotions, or preoccupied with the search for the desired product, or other thoughts related to the shopping experience as they walk through the store, it may not be unreasonable for a shopper not to notice a puddle of water of the floor.

*Id.*

The Sixth Circuit, applying Michigan law, has also considered whether clear liquid on the floor of an airport terminal is an open and obvious hazard. *Matteson*, 495 Fed. App'x 689. In *Matteson*, the plaintiff slipped and fell in an airport terminal. *Id.* Plaintiff testified that the substance was "thick . . . [and] clear." *Id.* Neither plaintiff nor any of the witnesses saw the substance on the floor before plaintiff fell, though all noticed its presence afterward. *Id.* at 690. Plaintiff explained that she had been "walking looking ahead, looking for [her] gate." *Id.* at 689.

The Sixth Circuit, in an unpublished opinion, reversed the district court's grant of summary judgment and found that the hazard was not open and obvious. *Id.* at 693. The Court explained that

"a clear spill on an airport floor is not 'the type of everyday occurrence that people [regularly] encounter.'" *Id.*, quoting *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606 (1995). The Court further explained that "it is not clear that an average person of ordinary intelligence traversing an airport terminal would have been able to discover the substance on casual inspection. Therefore, genuine issues of fact remain." *Id.* at 694.

The Court finds that there are genuine issues of material fact as to whether the water on the Target floor was an open and obvious hazard. Given that the floor is reflective and shiny, a clear collection of liquid might not be visible "upon casual inspection." *See Matteson*, 495 Fed. App'x at 691. Further, considering the circumstances upon which Plaintiff encountered the hazard, i.e. while searching for curtains in the aisle of a retail shopping environment, and not in a grocery section or in the entranceway to the store, it would be reasonable to conclude that Plaintiff may not have noticed or expected to encounter a puddle of water on the floor even if she was exercising reasonable care for her own safety. See *Snyder*, 1997 WL 33354547 at *2. Because reasonable minds could differ about whether the water spill was open and obvious, the Court shall DENY Defendant's Motion for Summary Judgment on this issue.

**B.     Is There A Genuine Issue Of Material Fact As To Whether Defendant Had Constructive Knowledge Of The Hazard?**

Plaintiff admits that she does not have any evidence establishing that a Target employee created the water spill in the aisle. Furthermore, Plaintiff has offered no evidence that Target had actual knowledge of the existence of hazardous water spill. Therefore, in order for Plaintiff to prevail, she must show that Defendant had constructive knowledge of the alleged water spill.

Where, as here, "there is no evidence that the defendant caused or actually knew of the unsafe condition, the plaintiff may show constructive notice by demonstrating 'that the unsafe

condition ha[d] existed for a length of time sufficient to have enabled a reasonably careful storekeeper to discover it.'" *Minni v. Emro Marketing Co.*, 1997 WL 359073 at *1 (6th Cir. 1997) (quoting *Whitmore v. Sears Roebuck & Co.*, 279 N.W.2d 318, 321 (Mich. Ct. App. 1979)). "Such a showing requires evidence that the condition had existed for a 'considerable time.'" *Id*. The mere fact of an accident, standing alone, is insufficient. *Id.* "Generally, the question of whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law." *Jackson v. Target Corporation*, Slip Copy, 2013 WL 3771354 at *5 (E.D. Mich 2013), citing *Banks v. Exxon Mobil Corp*, 477 Mich. 983, 984 (2007).

The Court finds that there is a genuine issue of material fact as to whether the alleged water spill existed for a period of time such that Defendant, if it was being reasonably careful, should have discovered it. Plaintiff testified that the water spill appeared to have partially dried up, which she claims supports her theory that the water had been present on the floor for more than a few minutes. Plaintiff, Colasanti, and Oliver all indicated that there was a dirty shoe print near the water spill and it appeared to have been "tracked through."

Additionally, the evidence suggests that the water spill could have existed for a considerable amount of time, given the frequency with which the aisles had been inspected on that day. Bender testified that the water causing plaintiff's fall could have been in existence for at least thirty (30) minutes to an hour prior to the incident. (Bender Dep. at 68). Oliver testified that the water could have been on the floor as long as two hours before Plaintiff fell. (Oliver Dep. at 33). Gedert testified that he last inspected the curtain aisle between 9:00 a.m. and 9:30 a.m. on the morning of Plaintiff's fall — a full three and a half hours before Plaintiff fell. (Gedert Dep. at 29-30). This

9

evidence would allow a reasonable juror to conclude that the water existed for a "considerable" period of time, which would establish that Defendant had constructive notice of the defect. Therefore, the Court shall DENY Defendant's Motion for Summary Judgment.

## CONCLUSION

Based on the foregoing, the Court shall DENY Defendant's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56. (Doc. #16).

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: December 17, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 17, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager